Okay. People v. Strong. Yes, sir. Thank you. Thank you for your support. Cool with that, too. Hot. Just a little hot right there. Your Honor, in this case, the die was cast, and my client, Terry Strong, was convicted. Long before Terry was sworn. The die was cast, and my client, Terry Strong, was convicted. The moment, it became too late for his counsel. At trial, Mr. Walker, the final motion, which challenged the voluntariness of the statements that he made to the police, which occurred at the same time as his arrest. If he had done so, we wouldn't be here. And part of the reason we know that we wouldn't be here if he had done so is because of the affidavit, which Mr. Walker submitted in opposition to our motion according to the trial, when we first pointed out, argued, suggested that he had been ineffective. He had been ineffective, and he did not act as reasonable counsel would have long before we got to trial. Long before we got to trial. As soon as he received evidence, and he had received evidence, credible medical evidence, and medical records from my client, his client, our client, Terry Strong, that in this accident he had sustained a concussion. He had sustained memory loss. He had gone to the hospital. As soon as he received this evidence, what reasonable counsel would have done, and what Mr. Walker should have done, is file a motion which challenged the voluntariness of his confession. Now, in fairness, he did move the morning of trial to bar his statement as violating a program. He was successful in that regard, but that wasn't enough because the door was still open to impeachment. That effectively hamstrung his defense. If he had challenged it as involuntary, the statement doesn't come in for any purpose, and there is a reasonable probability that he would have succeeded in that regard. Number one, because the state has the burden. By a preponderance in that respect, the defense doesn't have the burden of proving voluntariness. The state has to prove voluntariness. He had all of this evidence. Reasonable counsel would have convened a hearing. Reasonable counsel would have introduced the medical record. He would have introduced evidence that his client had no memory of what occurred that day. We had from the medical record. We also had from his parents, the affidavits of which have been submitted every quarter of the record. He didn't remember what had happened. He didn't remember the accident. He didn't remember being arrested. He didn't have any encounter with the police or to take him home. He woke up at about 3 o'clock in the morning, moaned, and asked where he was and asked what it was that had occurred. Asked what it was that had occurred. That should have been presented at a motion to suppress. That should have been the basis for the argument that the statement was involuntary. He had discharge instructions from the hospital. They should give the people with a concussion. He told the police things. A reasonable counsel at a hearing would have presented to the judge well before the jury was sworn. Well before the jury was sworn. The fact that Terry told the police things which were demonstrably untrue. He said he hadn't eaten in four days. He said that he had hurt his head earlier in the day when it was true. It was provable that he did hurt his head earlier in the day. Not that the state has suggested that those are signs and symptoms of intoxication. Well, sure. Sure they would have and they would have made that argument to the judge. But there's all of this evidence that was there that should have formed the basis of a motion to suppress. If that statement is kept out as involuntary, so it does not come in for impeachment. Not just in their case receipt, but it doesn't come in for any purpose. That the concerns that Mr. Walker outlines in his affidavit and explains in his affidavit wouldn't compress it. The bottom line is that it is not trial strategy. It is not trial strategy when your own lack of diligence boxes you into a corner and leaves you with only one move. And that's what occurred in this case. He basically dealt himself a bad hand. He dealt himself a bad hand and then he complains that it was a bad week. And it was a closely balanced case, too. The judge said, the judge said that he expected the jury to come back not guilty in about ten minutes. It was a closely balanced case. And in this closely balanced case, what Mr. Walker explains, what Mr. Walker tells us in his affidavit, is that the reason he did not put on any evidence of a concussion. Now the state suggests that he did present a concussion defense. I don't think that he did because he quotes from those medical records to the jury in his opening statement. He doesn't just make references to it. He quotes from the dictionary instruction listing the signs and symptoms of a concussion verbatim. And if you're going to quote to a jury verbatim that which you expect, the evidence to show that which is contained in medical records, I would certainly expect reasonable counsel to intend to introduce those medical records. And he tells us in his affidavit that he would have introduced the medical records. He intended to introduce the medical records with his client, except because the statements that Terry made to the police still came in for purposes of impeachment, he couldn't do that. That's the reason that he didn't do it. It was our feeling. Excuse me. The medical records would only come in if Terry testified, I'm quoting from paragraph 7 of Mr. Walker's affidavit, which appears in the record in C-135. Quote, the medical records would only come in if Terry testified. If he testified, his prior statements made to the police about his driving and ability to drive could have potentially come in. Terry and I believe the risk of testimony from these witnesses was not worth the potential benefit. The reason that the risk existed in the first place is he never challenged the statement. In 2012, all that we know about concussions and head injuries and what occurs when you have a concussion, and the fact that you have memory loss, the fact that you're confused, all of these symptoms that he exhibited never were challenged. Should have been challenged, Judge Gross should have had the opportunity to review them. That's where the true ineffective assistance was. Now, going forward at trial, is there additional effective assistance? Yes, there was. There was. There's ineffective assistance with respect to promising a defense and not presenting it. There was ineffective assistance with respect to having evidence of a deer strike, having photographs that the judge said, the judge said, man, you've got to admit, those really look like deer hair to me. That really looks like a deer strike. And Mr. Walker knew about that. Mr. Walker knew that the accident had been investigated, and they determined that it was a deer strike. Insurance didn't hold him liable because of the deer strike. The judge acknowledges that those would have been proper topics for investigation. Mr. Walker never investigated that. And in summation, Mr. Walker never argued that there was a deer strike. He never argued that a deer ran in front of him. He let the state continue to argue, suggest that instead of a deer strike, which he only made up afterwards, according to the state, he drove off the road because he was drunk. Which means not only is that the basis of the improper language of the judge, which is likewise convicted of, and he is entitled to effective assistance on both charges. It doesn't matter if it's just a traffic offense. He is entitled to effective assistance on both. But that also formed a key piece of evidence in what the judge, again, said was a closely balanced case. The jury never saw any evidence that, you know what, maybe he didn't stay as close to within his own lanes as is practicable, which is what the statute says, because he was drunk. Maybe instead it was because a deer ran out. This is Randolph County. This happens in Randolph County. They know it happens in Randolph County. Even the state hearing in Greece suggested, no, there was no deer strike because there's no blood and there's no body, like, you can't have a landscape road. Like, you can't swerve to avoid something, particularly where we know from the geography of the road, which is also described in the record, that there's a bed right there. That was never challenged. That was never challenged. That was never presented to the jury. And that's part of why it is that instead of them coming back not guilty in 10 minutes, which is what they were expected them to do, they instead come back guilty on both in 18 minutes. There is no justification for not presenting that evidence. There is none. He's got photographs. That's not explained here. His affidavit doesn't set forth what the basis of that strategy is. Trial strategies, admittedly, yes. Why? Burden. A huge umbrella and a whole bunch of ostensibly questionable justifications are, nonetheless, sustained. Because I've got the burden down here. You've got the burden. And these cases are tough. Infection assistance cases are tough. And there's a reason that they're tough. But what the case is nonetheless telling me, what this court questions, what the Supreme Court question is telling me, is that there still must be some justification. There still must be some basis. Not simply second-guessing. If you point to something and say, yes, I can see why it is that he would have done that, then sure. That falls under the realm of trial strategy. But if he's got photographs here, from afar, what possible reason could there be to not present that injury, particularly when the state's suggesting to him that that never happened? If he's got affidavits, if he's interviewed these people, and these people have told him, look, he's exhibiting all these signs and symptoms of a concussion. He's not himself. He doesn't know where he is. He doesn't know how he's gotten here or any of these things. What possible justification is there to not admit that? To not pursue that as part of your defense? That's not explained anywhere in the affidavit, because there's no basis for not doing so. There's no conceivable justification for not doing so. But it all gets back to those statements. It all gets back to the fact that I've got all these medical records, and the judge acknowledges, I believe that the medical records would have been admissible. I've got all of these, but he doesn't introduce them because he can't. Because the door is open for impeachment, because he's never challenged those statements in the first place. If he doesn't know what happened, if he's exhibiting these symptoms, which are documented, if he's got a doctor that comes in and says to the judge, hey, look, if he can attack the police report, not in front of the jury, not in front of the jury, well before all of this happened, and that's where Judge Gross' order is slightly off. What Judge Gross' order talks about is with respect to just the trial itself. He says, what I have to decide is whether or not these decisions do in fact constitute ineffective assistance. Is that what reasonable counsel would have done? And he ultimately determines, not that the evidence wasn't closely balanced, not that no prejudice was shown. He could have exposed it really easily that way. He could have said there's no prejudice, and if the cases tell us that's what we're supposed to do, unless it's closely balanced, but it was closely balanced, it would have made a difference. But that's the only thing his order talks about. His order never says anything about the fact that it was reasonable to not pursue this motion, to not put all of this evidence in front of the judge and force the state to carry their burden, not our burden, their burden, as to whether or not Terry's statements, in fact, were the unfettered product of his own free will, that they are inherently trustworthy and reliable. That was never challenged. If it had been, there's absolutely a reasonable probability that it would have been ruled upon in our favor. There's absolutely a reasonable probability that the outcome, therefore, would have been different. And that's what it is that should have occurred. The other thing about it is that when the state talks in their reply brief about the fact that, well, even if it's challenged, the statement's been challenged, you cannot challenge the recognizer. The recognizer always comes in, and what they say is, and what they say in their brief, is that there's evidence of consciousness of guilt. Not if he's not functioning as a reasonable person would have, as somebody whose bell hadn't just gotten rung, as somebody whose eggs weren't scrambled, as somebody who doesn't remember that was the occurrence. How can we say that it is reliable if he refused to be recognized? And that is evidence of consciousness of guilt. If he's got no recollection of that having even occurred, how can we say that it is reliable? And that's when you come in with a pretty certain case, not a random challenge, a voluntary challenge, an inherent due process trustworthiness challenge. If he doesn't go, what happens? And I'm not saying maybe the judge disagrees. Maybe the judge overrules such a motion. Maybe the judge says, you know what, I do think it's voluntary. Maybe he does that. Maybe he doesn't. That's not the question. Is there a reasonable probability, given all of this evidence that he had, all of this ammunition that he had, which was never presented to the judge, free of jury, well before a jury is to be sworn, is there a reasonable probability that he rules in Terry's favor? Absolutely there is. Absolutely there is. All of this evidence, all we know about concussion, and all of the things that don't square, don't line up, and don't point to voluntariness, don't point to liability, don't point to trustworthiness, there's absolutely that reasonable probability that that was never done. And because that was never done, he's stuck with this affidavit in which he explains that these were the choices that I made, this is why I made those choices. But the reason he made those choices is because he never filed a motion. He gave himself only one path that he could follow. That would be trial strategy if somebody else had stepped in, if somebody else had tried that. That would be trial strategy if he had pursued the motion and the motion turned out to not be successful. But it's not trial strategy when you don't even try and there's a reasonable probability that you would have succeeded and then turn around and say, I couldn't get this stuff in the evidence because I was afraid that the door was going to open. The door only was at risk of opening because he never availed himself of all of this evidence that he had. He never challenged it. He never tried. Long before that jury was sworn, that jury was paneled, they were in evidence, and this was presented. Long before that. I was cast. And that's what makes that consistent. That's what makes those most recognized in this order. That's what the key is. Long before we went to trial. Long before the jury came back guilty. It should have and would have played out entirely differently if he had acted as reasonable counsel would have done. What reasonable counsel would have done is avail himself of the rule that if the statement is not voluntary, if the statement is not free of a federal choice of its maker, it doesn't come in for any purpose including impeachment. Thank you. Good morning. Good morning, Your Honors. Your Honors, counsel may please report Kelly Stacey appearing on behalf of the people. On appeal, the defendant asked this court to suspend the strong presumption that trial counsel's conduct might have been considered sound trial strategy and find counsel was ineffective in this case. The law presumes though that challenge, conduct or inaction on behalf of trial counsel is presumed to be sound trial strategy. In his reply brief, the defendant points to Mr. Walker's affidavit as evidence that he provided ineffective assistance to counsel. He contends that there was all of this exculpatory evidence that counsel just refused to have admitted or for whatever reason chose not to even present it at the trial. In this case, there simply was no exculpatory evidence. Everything raised by the defendant on appeal concerns matters of professional judgment and trial strategy and most of what he raises in the affidavit is clear that Mr. Walker discussed all of these things with the defendant and jointly they decided not to present these things. With regard to whether the photographs actually show deer hair, I invite your honors to take a look at those photographs. What they appear to be to me and what the state argued at the trial court level was that it appears as though when the car left the roadway, it went down over a drainage ditch, went airborne apparently, went about 100 yards off the roadway. It started to flip over and as it did, plowed up dead grass material and it isn't just something hanging off the side mirror of the car. This same grass-like looking substance is all around the wheel. It's all on the underside of the front end of the car. So how that can be a deer stripe, I just don't get that. I don't see how that actually proves that any of that substance is deer hair. Nothing presented at the trial court level shows that it's evidence of any deer hair. There's no dead deer, there's no blood, no carcass, not anything. No swerve marks. I think that's just a fanciful conjecture on behalf of the defendant. And appellate counsel outlines in the reply brief what he would have done had he been representing Mr. Strong at trial. He would have noticed up in hearing, he says, but he doesn't say what type of hearing this would have been. Presumably, based on his argument, this would have been a motion to suppress. We do know a motion in limine was filed and as a result of that motion in limine, actual statements, verbal statements made by the defendant, were kept out of the trial. The jury never heard that the defendant told the officer, well, I had quite a bit to drink and no, I shouldn't have been driving. The jury did not hear that the defendant had two prior DUI arrests and this officer was aware of that. Those things were prejudicial. Those things are subject to a motion in limine, potentially even a motion to suppress. Whether or not counsel filed a motion in limine or a motion to suppress, really doesn't make a difference when the end result is none of that evidence came in at trial. What he's talking about here to you today are not statements. A refusal to submit to a breathalyzer is non-testimony. There is absolutely no basis in law to file a motion to suppress. It simply would not be granted. If it had been, I would be here today asking you to reverse that decision. I would refer the court to a case cited in the People's Brief. It's called People v. Bugbee. It's a 2nd District 1990 case. In that case, the trial court granted a motion to suppress where the defendant refused a breathalyzer test. The 2nd District reversed that decision and they based their 1990 decision on the U.S. Supreme Court case of South Dakota v. Neville. That's a 1983 case. And an Illinois Supreme Court case called People v. Rolfingsmeier. I'm pronouncing that right. That's from 1984. This is long-standing case law. Breathalyzer test refusals are admissible. They're admissible as consciousness of guilt. And the state has every right to argue the reason the defendant refused to take the breathalyzer is he was afraid, he was shuddered, he was driving under the influence of alcohol. Nothing raised here today changes the outcome. Nothing raised here today supports the contention that a motion to suppress would have been successful. Illinois is an implied consent state. When you drive on roadways in Illinois, you imply a new consent to breath tests. If it is the law that an unconscious person can have blood invasively removed from them without consent, then it only follows, and that's what the U.S. Supreme Court and Illinois Supreme Court cases actually say, if it's okay to do that in that type of a case, then surely asking a defendant who you believe has been drinking and you have reasonable suspicion that he has to submit to a breathalyzer test. It's certainly his choice to refuse, but he's not allowed to keep that refusal out. The state simply does not have any burden to prove that a refusal to submit to a breathalyzer test is voluntary. I would submit that this is the same whether or not, which the state certainly doesn't concede this, I believe there is no evidence of a concussion. We do have a bump on the head, but all of these medical reports, there's not a single diagnosis in there of a concussion, even if the medical records did show it. Nothing shows what the defendant's condition was at the time of the crash. He waited until the next day, until mid-afternoon, about 12.58 in the afternoon, to actually go to the doctor for any type of help. And again, even if he had a concussion, it doesn't justify a refusal to submit to a breathalyzer. Even if he had a concussion, which could potentially explain memory loss, which again is something that happened after the fact, the next day he couldn't remember when he woke up at his parents' house, or why am I here, and yeah, my head does hurt a little bit. None of that changes the outcome. Nothing shows what was going on at the time, and it certainly does not explain why this defendant reeked of alcohol and beverages. You have two officers who testified that the defendant smelled of alcohol. He failed the field sobriety test. After that, he refused further field sobriety testing, and he refused to submit to a breathalyzer. It didn't take the jury very long to come back, and I believe that's because there was significant evidence of the defendant's guilt. The alternative explanation on the concussion does not explain away, again, the smell of alcohol on the defendant's breath. With regard to the witnesses, it's pretty clear in Illinois law which witnesses to call is a matter of professional judgment and a matter of trial strategy. Those affidavits are actually internally inconsistent, and what they would actually show to a jury is that if it's true the defendant was not drinking at 8.30 or 9.00, or even 9.30, one of the affidavits says, at night, then between 9.30 and 11.38, he drank enough to smell overwhelmingly of alcohol. I submit to the court that that is the reason that this crash occurred. This was clearly a divided roadway, painted lines in the center. The defendant did not keep his vehicle in that lane. I think it was essentially trial strategy to not put a lot of emphasis on that. The defendant only received a $120 fine for that, nothing in addition to that, and I believe the case law is pretty clear, the jury instructions are pretty clear that those are the two things the state has to prove. Obviously, the officer's testimony established that, and had those photographs been introduced, I think it would be even more clear that that's what occurred in this case. The defendant now says, well, there should have been some more evidence presented of this whole concussion instance. There are two different ways you can get evidence presented in trial court, and I know your honors are well aware of that. One is through your case in chief on direct examination of witnesses. The other is through cross-examination, and that's how Mr. Walker chose to do this. It was a good idea to do that on cross-examination because it could be that the defense would decide, well, we're not going to present anything on our case in chief, we're just going to rest and rely on what the state presented. Judge Gross pointed out in his order that the state had just finished playing a video of the entire stop, and the sound did not work on the video. I think Judge Gross felt like the momentum was going in favor of the defense, and that's why he thought, well, the jury could come back in 10 minutes with a not guilty verdict. It's impossible to guess how a jury is going to feel about these things, and the fact that it went against Mr. Strong certainly does not presuppose that counsel was ineffective. Even errors in judgment do not rise to the level of ineffective assistance of counsel. Nothing presented here today shows the result of the proceeding would have been different. Nothing presented here today shows the defendant was prejudiced in any regard, and in fact, the hindsight review counsel is suggesting this court take is forbidden by courts of review. The actual review is to look at an objectively reasonable attorney at the time of trial, not when the jury has already determined their verdict, and you think, gee, was there something else I could have or should have presented? I don't believe anything changes the outcome in this trial, and the determination of which witnesses to call and which evidence to present falls squarely in the purview of professional judgment of the trial counsel. Based on all this, people respectfully request you to adjourn. Thank you. Counsel? Thank you. A couple of things in response to that. First off, what I'll make is suggestions that the court looks at what it is that counsel did at the time of trial and not what they think you should have said. That's not after the jury came back. That's half right. That's half right. We don't just look at the trial. We look at his performance throughout the entire course of the representation. Where is there any reference to an explanation for why it is that they don't make that argument to the judge? Where is that explanation, justification, for why it is that he doesn't try? He can testify at that suppression hearing, 104B, preliminary matters, does it open himself up to cross-examination on other matters. He can present medical evidence that he says he didn't present now because he was afraid of what the jury was going to hear from his client to Judge Gross prior to trial and move to suppress that as voluntary, doesn't come in for any purpose. That's what should have occurred. If that had occurred, then there's nothing to second-guess with respect to trial. If that had occurred, they were probably not here. But it didn't occur, and we don't decide, we don't have to decide, and it's not for this court to decide whether or not there was a concussion or not, whether or not it would have been suppressed or not. The question is, is there a reasonable probability that it could have been? If all of that is presented to the judge, is there a reasonable probability that it would have been different? Absolutely, there is. That's what the standard is, not second-guessing, not, to quote a phrase with respect to the deer here, quote, fanciful projection.  The counsel says, quote, it's impossible to guess what a jury would have done and that nothing shows that it would have been different. That's not what the standard is. Is there a reasonable probability they might have decided differently if Mr. Walker's early and effective assistance, if his failure to challenge that statement, hadn't tied his hands? That's what the question is. And there's absolutely such a reasonable probability, but that's it. Not retry the case, not what we would have done if we were in panel. You said, hey, it's closely balanced, and all of a sudden these concerns that he sets forth in his affidavit are no longer a question. Is there a reasonable probability that that would have been different? And there absolutely is. The state talks about internal inconsistencies in the affidavit. Nobody says he's drinking at night 30, that between night 30 and 11.58, he must have really, really gotten hammered. Or, and that's not what the affidavit said, but what the state keeps ignoring and overlooking is the fact that the lights in the car were dead. The lights were fading. That was the truth of the testimony. As we came out of the crime, the lights were dead. The car had been down in that ditch for so long. Was the car upside down? No, sir. The car was not. And with respect to the state's intention, that there's all this grass that got picked up, and that's what it was. Not deer hair, but instead grass, and they talk about pants that were full of conjecture. The first time that it was suggested that it was deer hair, and those photographs, quite different. The judge looked at those and said, you've got to admit, Mr. Schmidt, those sure look like deer hair. That sure looks like deer hair to me. And to suggest that the jury, the Randolph County jury, might not have thought the same thing that the Randolph County judge did with respect to deer hair, and that's just answer for conjecture. It's not. That's what the judge said. They're saying that you should affirm the judge on grounds that it required them to repeatedly second-guess and question the judge. There's an internal inconsistency for you, but in this case, no. Never presented that to them. Never presented any type of a concussion. Get this in for cross-examination. He explains why in his affidavit. Now, did those photographs, were they admitted? No, sir. They were never. He says in his affidavit that, yes, I had the photographs. He does not give an explanation for why he didn't introduce them to the jury. But he does acknowledge that he had the photographs. He acknowledges his witnessing that he was, were a part of some internal dispute with respect to affidavits that was interviewed. He wasn't and things like that. But again, there must be some basis in justification for why it is that that decision isn't made. The affidavit doesn't give us a justification except for the fact that he was worried about statements that he never challenged in his first instance. Thank you all very much. Thank you, counsel. Is there any next case? 10 o'clock. 10 o'clock.